**Affirmed and Memorandum Opinion filed June 20, 2019.**



In The

# Fourteenth Court of Appeals

### NO. 14-18-00008-CR

### CHRISTOPHER M. PELLETIER, Appellant

### V.

### THE STATE OF TEXAS, Appellee

**On Appeal from the County Criminal Court at Law No. 5
Harris County, Texas
Trial Court Cause No. 2092282**

### MEMORANDUM OPINION

Appellant Christopher M. Pelletier was convicted of misdemeanor assault of a family member. *See* Tex. Penal Code § 22.01. Appellant was then sentenced by the trial court to serve 250 days in jail. Appellant raises three issues on appeal. In his first issue, appellant argues that the trial court violated the Confrontation Clause of the United States Constitution when it admitted testimony recounting the complainant's out-of-court statements. We overrule this issue because we conclude that the challenged testimony regarding the complainant's out-of-court

statements is non-testimonial. Appellant asserts in his second issue that the trial court abused its discretion when it admitted the complainant's out-of-court statements because they were inadmissible hearsay. We overrule this issue because it was not outside the zone of reasonable disagreement for the trial court to conclude that the complainant's out-of-court's statements were excited utterances. Finally, in his third issue, appellant challenges the trial court's failure to instruct a witness to answer a question. We overrule appellant's third issue because (1) he failed to preserve any complaint that the trial court's failure to instruct a witness to answer violated his due process rights; and (2) the trial court's handling of the pending question did not constitute an improper comment on the weight of the evidence. We affirm the trial court's judgment.

## BACKGROUND

Because appellant does not challenge the sufficiency of the evidence supporting his conviction, we include only those facts necessary to address the issues he raises in this appeal.

We begin by initially pointing out that the complainant, Jenelle Williamson, did not testify during appellant's trial. Appellant, Jenelle's husband, also did not testify. The State called Jenelle's father, Dr. Stanton Packard, as its primary witness. Dr. Packard testified that he received a phone call from his daughter, Jenelle. Dr. Packard testified that he was good friends with his daughter Jenelle and that they talked just about every day. According to Dr. Packard, Jenelle was crying, and she sounded frightened. Jenelle told her father that she was hurt. Dr. Packard immediately drove to the motel where Jenelle had been staying, which took about thirty minutes. Upon arrival, he found Jenelle in the motel's parking lot. According to Dr. Packard, his arrival could have been as much as ninety minutes after the assault occurred. Jenelle was crying, limping, and her clothing

2

was torn. Jenelle was four months pregnant, holding her stomach, and complaining that her belly hurt. Jenelle had visible bruises on her forearms. According to Dr. Packard, Jenelle appeared embarrassed, fearful, and in pain. Jenelle told her father that her husband, appellant, had shoved her up against the walls of the motel room, had picked her up, and then body-slammed her onto the floor.

Dr. Packard drove Jenelle to a nearby emergency room. Jenelle had sustained a sprained left forearm, a left-arm contusion, and she had swelling of the left hip, left foot, and both legs. Dr. Packard called 9-1-1 while they were still at the emergency room.

Appellant eventually was charged with misdemeanor assault of a family member. During trial, appellant's attorney questioned Dr. Packard regarding a past false allegation of sexual assault Jenelle had made against Dr. Packard. Subsequently, appellant's attorney asked Dr. Packard whether Jenelle had made past accusations of abuse against her former husband. Dr. Packard then answered: "Am I required to talk about this?" The trial court responded, "I guess so. There's not been an objection." The prosecutor then asked to approach the bench. Once the attorneys were at the bench, the trial court said: "Ya'll need to pay attention." After a brief discussion at the bench, the trial court removed the jury from the courtroom and allowed appellant's attorney to ask Dr. Packard questions regarding Jenelle's allegation that her prior husband had physically abused her. Dr. Packard testified about the events of that episode and explained that he believed Jenelle's account, at least at that time. The State objected that the evidence was not relevant because it was not a "false allegation accusation." The trial court sustained the objection and excluded the evidence.

The jury found appellant guilty of the charged offense. The trial court then

3

sentenced appellant to serve 250 days in jail. This appeal followed.

ANALYSIS

**I.    The trial court did not violate appellant's rights under the Confrontation Clause when it overruled his objection and admitted the complainant's out-of-court statements.**

In his first issue on appeal appellant contends that the trial court erred when it admitted Jenelle's out-of-court statements in violation of the Confrontation Clause of the United States Constitution. We disagree.

The Sixth Amendment provides that in all criminal prosecutions, the accused shall have the right to be confronted by the witnesses against the accused. U.S. Const. amend. VI. In *Crawford v. Washington*, 541 U.S. 36, 51, (2004), the Supreme Court of the United States held that the Sixth Amendment right of confrontation applies not only to in-court testimony, but also to out-of-court statements that are testimonial in nature. *Wood v. State*, 299 S.W.3d 200, 207 (Tex. App.—Austin 2009, pet. ref'd) (citing *Crawford*, 541 U.S. at 51). The Confrontation Clause forbids the admission of testimonial hearsay unless the declarant is unavailable to testify and the defendant had a prior opportunity to cross-examine the declarant. *Id.* In *Crawford* the Supreme Court did not extend this protection to non-testimonial hearsay. *Ford v. State*, 179 S.W.3d 203, 209 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd). The threshold question imposed by *Crawford*, then, is whether the proffered out-of-court statement is testimonial. *Lee v. State*, 418 S.W.3d 892, 895 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd). Whether a particular out-of-court statement is testimonial is a question of law. *Id.* at 895–96.

The Court of Criminal Appeals has summarized three kinds of testimonial statements: (1) "ex parte in-court testimony or its functional equivalent," i.e.,

"pretrial statements that declarants would expect to be used prosecutorially;" (2) "extrajudicial statements contained in formalized testimonial materials," such as affidavits, depositions, or prior testimony; and (3) "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *Langham v. State*, 305 S.W.3d 568, 576 (Tex. Crim. App. 2010).

"A statement is more likely to be testimonial if the person who heard, recorded, and produced the out-of-court statement at trial is a government officer." *Davis v. State*, 169 S.W.3d 660, 667 (Tex. App.—Austin 2005), *aff'd* 203 S.W.3d 845 (Tex. Crim. App. 2006). For example, statements obtained pursuant to a police interrogation are testimonial. *Id.* at 666. Not all statements made to a police officer are testimonial, however. In *Spencer*, we determined that a victim's initial statements to police were not testimonial because they were made when the police arrived on the crime scene to assess and secure the scene, and they bore "no indicia of the formal, structured questions necessary for statements to be testimonial." *Spencer v. State*, 162 S.W.3d 877, 883 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd); *see Wilson v. State*, 296 S.W.3d 140, 147 (Tex. App.—Houston [14th Dist.] 2009, pet. ref'd) ("Stated differently, the information solicited from Baez were [sic] necessary to enable police to arrest the suspect and resolve the present emergency.") (internal quotation marks omitted). We have also previously determined that the admission of a 9-1-1 tape did not violate the defendant's confrontation rights because the 9-1-1 call was a "cry for help." *See Dixon v. State*, 244 S.W.3d 472, 485 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd) ("Accordingly, we conclude the statements made in the 9-1-1 call initiated by Brownfield, when viewed objectively, were made under circumstances indicating that the primary purpose of the interrogation was to enable the police to meet an

ongoing emergency, rather than simply learn what happened in the past."). Finally, "statements made to someone who is not principally charged with uncovering and prosecuting criminal behavior are significantly less likely to be testimonial than statements given to law enforcement officers." *Avant v. State*, 499 S.W.3d 123, 129 (Tex. App.—San Antonio 2016, no pet.) (quoting *Ohio v. Clark*, 135 S.Ct. 2173, 2182 (2015)).

Here, Dr. Packard was not a government official. In addition, Jenelle's statements, initially made over the telephone to her father and then in the middle of a motel parking lot, "were neither official and formal in nature nor solemn declaration[s] made for the purpose of establishing some fact." *Dixon*, 244 S.W.3d at 485 (internal quotation marks omitted). They were not made in response to police questioning. Indeed, no police officer was present when Jenelle made the statements. In addition, there is no indication that Jenelle made the statements with the primary objective of proving those events for a subsequent criminal prosecution. They were instead, a "cry for help" to her father. *See Dixon*, 244 S.W.3d at 485. We conclude that the facts in today's case resemble the facts in *Avant*. *See Avant*, 499 S.W.3d at 129. There, an elderly woman called her daughter, the person she regularly turned to when she needed assistance, seeking help. *Id.* at 125. The State sought to introduce the mother's statements to her daughter through the daughter. *Id.* The defendant objected on confrontation grounds, but the trial court overruled the objection and admitted the evidence. *Id.* In a subsequent appeal, the San Antonio Court of Appeals affirmed, holding that the statements were nontestimonial, at least in part because they were made during a call seeking help from the woman's daughter, the person from whom she regularly sought assistance. *Id.* at 129. We hold that Jenelle's statements to her father were non-testimonial and their admission did not violate appellant's

6

confrontation rights.  We overrule appellant's first issue.

**II.    The trial court did not abuse its discretion when it overruled appellant's hearsay objection and admitted the complainant's out-of-court statements.**

Appellant argues in his second issue that the trial court abused its discretion when it overruled his hearsay objection to Dr. Packard's testimony regarding Jenelle's statements about appellant assaulting her.  The State responds that the trial court did not abuse its discretion because Jenelle's statements qualified as an excited utterance and therefore were admissible into evidence as an exception to the hearsay rule.  We agree with the State.

We review a trial court's decision to admit evidence for an abuse of discretion.  *Zuliani v. State*, 97 S.W.3d 589, 595 (Tex. Crim. App. 2003).  A trial court abuses its discretion only if "the trial judge's decision was so clearly wrong as to lie outside that zone within which reasonable persons might disagree."  *Cantu v. State*, 842 S.W.2d 667, 682 (Tex. Crim. App. 1992).  If the trial court's evidentiary ruling is correct on any theory of law applicable to that ruling, we must affirm the ruling.  *Gomez v. State*, 380 S.W.3d 830, 836 n.9 (Tex. App.—Houston [14th Dist.] 2012, pet. ref'd) (citing *De La Paz v. State,* 279 S.W.3d 336, 344 (Tex. Crim. App. 2009)).

Hearsay is a statement made outside of court and offered into evidence to prove the truth of the matter asserted.  Tex. R. Evid. 801(d).  Although hearsay is generally inadmissible, Texas Rule of Evidence 803 provides an exception for admitting excited utterances: statements "relating to a startling event or condition made while the declarant was under the stress of excitement that it caused."  Tex. R. Evid. 803(2); *see Zuliani*, 97 S.W.3d at 595–96.  There are three requirements for a statement to be an excited utterance: "(1) the statement must be the product of

a startling occurrence that produces a state of nervous excitement in the declarant and renders the utterance spontaneous; (2) the state of excitement must still so dominate the declarant's mind that there is no time or opportunity to contrive or misrepresent; and (3) the statement must relate to the circumstances of the occurrence preceding it." *Kesaria v. State*, 148 S.W.3d 634, 642 (Tex. App.—Houston [14th Dist.] 2004), *aff'd*, 189 S.W.3d 279 (Tex. Crim. App. 2006). Generally, a trial court may rely on the contents of the statement itself, along with the declarant's appearance, behavior, and condition, to determine the occurrence of an exciting event and the declarant's personal perception of it. *Ross v. State*, 154 S.W.3d 804, 809 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd). The court may also consider the time elapsed and whether the statement was in response to a question. *Salazar v. State*, 38 S.W.3d 141, 154 (Tex. Crim. App. 2001). These factors are not dispositive, however. *Zuliani*, 97 S.W.3d at 596. The critical determination is "whether the declarant was still dominated by the emotions, excitement, fear, or pain of the event" or condition at the time of the statement. *McFarland v. State*, 845 S.W.2d 824, 846 (Tex. Crim. App. 1992).

Appellant argues on appeal that Jenelle's statements did not qualify as excited utterances because there was no indication that she was still under the stress of the event. A potential time span of ninety minutes had elapsed between the time of the assault and the time Jenelle made the statements to her father in the motel parking lot. Appellant also argues that Jenelle was not dominated by the emotions, excitement, fear, or pain of the event because Dr. Packard testified during appellant's trial that she appeared "lucid." Even if we assume ninety minutes had passed when Dr. Packard arrived at Jenelle's motel, that amount of time, in and of itself, does not establish that Jenelle was no longer "dominated by the emotions, excitement, fear, or pain of the event." *See McFarland*, 845 S.W.2d

8

at 846. We instead conclude that it was within the zone of reasonable disagreement for the trial court to conclude, based on the evidence detailed above, that Jenelle, who was four-months pregnant at the time she was body-slammed to the floor, was still dominated by the emotions, excitement, fear, or pain caused by the assault. *See Price v. State*, 502 S.W.3d 278, 285 (Tex. App.—Houston [14th Dist.] 2016, no pet.) ("Given the traumatic nature of the robbery, his girlfriend's testimony that Fraustro was 'hysterical' afterwards, Officer Cabrera's description of Fraustro as 'visibly upset' and 'shaking' at the time of the statements, and the relatively short time between the robbery and his statements, it was not outside the zone of reasonable disagreement for the trial court to conclude that Fraustro was still under the stress of the robbery when he made the statements."). The fact that Dr. Packard described Jenelle as "lucid" twice during his testimony does not change that result. Lucid means "mentally sound" and "easily understood." *The Merriam-Webster Dictionary New Edition* 427 (2004). That Jenelle could be understood does not mandate a conclusion that she was no longer dominated by the emotions, excitement, fear, or pain of the assault. *See e.g. Price*, 502 S.W.3d at 285 (victim's out-of-court statements admitted as excited utterances even though he provided clear description of suspects and stated he could identify them again). In addition, the second time Dr. Packard referred to Jenelle as "lucid" was in direct response to a question asking if he believed Jenelle was under the influence of drugs when he spoke to her at the motel. Dr. Packard's testimony that he believed Jenelle was drug free that evening also does not establish that the trial court's determination that Jenelle's statements were excited utterances was outside the zone of reasonable disagreement. We hold that the trial court did not abuse its discretion when it admitted Dr. Packard's testimony regarding Jenelle's out-of-court statements as excited utterances. We overrule appellant's second issue.

9

**III.    The trial court did not comment on the weight of the evidence.**

In his third issue, appellant complains about the trial court's response to Dr. Packard asking: "Am I required to talk about this?"  The trial court responded, "I guess so.  There's not been an objection."  Appellant initially asserts that the trial court's response denied him a fair trial in violation of his right to due process of law.  Appellant did not, however, voice any objection at trial that the trial court's statement violated his due process rights.  Almost every right, both constitutional and statutory, may be forfeited by a failure to object.  *Glover v. State*, 496 S.W.3d 812, 816 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd).  This includes a defendant's due process rights.  *Jackson v. State*, 495 S.W.3d 398, 419 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd).  Because appellant did not object that the trial court's statement violated his due process rights, we conclude that he waived the complaint by failing to raise it in the trial court.[1]  *Id.*

Appellant next argues that the trial court's statement in response to Dr. Packard's question amounted to an impermissible comment on the weight of the evidence in violation of Article 38.05 of the Texas Code of Criminal Procedure.  While appellant did not object on this basis in the trial court, he was not required to do so to raise it as an issue on appeal.  *See Proenza v. State*, 541 S.W.3d 786, 798-02 (Tex. Crim. App. 2017) (holding that claims of improper judicial comments raised under article 38.05 are not within *Marin's* third class of forfeitable rights and that the right to be tried in a proceeding devoid of improper judicial commentary is at least a category-two, waiver-only right).  Because the record does not reflect that appellant plainly, freely, and intelligently waived his right to

---

[1] To the extent appellant complains that the trial court's subsequent comment to the attorneys at the bench, "Ya'll need to pay attention," violated his due process right to a fair trial, we conclude that he failed to preserve this complaint by failing to make a contemporaneous objection.  *Jackson*, 495 S.W.3d at 419.

his trial judge's compliance with article 38.05, appellant did not forfeit his complaint, and he may assert it for the first time on appeal. *See id.* We therefore turn to the merits of appellant's complaint.

The trial judge is required to maintain an attitude of impartiality throughout a trial. *Simon v. State*, 203 S.W.3d 581, 589 (Tex. App.—Houston [14th Dist.] 2006, no pet.). Article 38.05 of the Texas Code of Criminal Procedure provides:

> In ruling upon the admissibility of evidence, the judge shall not discuss or comment upon the weight of the same or its bearing in the case, but shall simply decide whether or not it is admissible; nor shall he, at any stage of the proceeding previous to the return of the verdict, make any remark calculated to convey to the jury his opinion of the case.

Tex. Code Crim. Proc. Ann. art. 38.05.

When ruling upon the admissibility of evidence, the trial judge's remarks should be limited to a simple announcement of the evidentiary ruling. *Simon*, 203 S.W.3d at 590. The trial court improperly comments on the weight of the evidence if it makes a statement that (1) implies approval of the State's argument; (2) indicates disbelief in the defense's position; or (3) diminishes the credibility of the defense's approach to the case. *Joung Youn Kim v. State*, 331 S.W.3d 156, 160 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd); *Simon*, 203 S.W.3d at 590.

Appellant argues that the trial judge's response to Dr. Packard's question improperly "conveyed to the jury that the defense's question was not worth answering, not proper, and the trial court had to 'save the day' by instructing the prosecution to object." We conclude that the trial judge's comment does not implicate Article 38.05 because the trial court simply observed that no objection had been raised and the comment had no bearing on the weight of the evidence. *Cf. Simon*, 203 S.W.3d at 591–92 ("Though there is nothing in the record to suggest that the trial judge acted with improper motives in presiding over the trial

11

in this case, we nonetheless conclude that his comments indicated a disbelief in appellant's position, and implied approval and support of the State's position."). At most, the trial court's remark suggested that the line of inquiry on cross-examination was objectionable; however, a comment on the admissibility of the testimony—as opposed to the weight of the testimony—is not improper. *See Martinez v. State*, 147 S.W.3d 412, 420 (Tex. App.—Tyler 2004, pet. ref 'd) (trial judge's reference to the fact that it had overruled a defensive objection was comment on admissibility of the evidence, rather than comment on weight of the evidence). Therefore, we hold that the trial judge's answer to Dr. Packard's question did not constitute an improper comment on the weight of the evidence. We overrule appellant's third issue on appeal.

## CONCLUSION

Having overruled appellant's issues on appeal, we affirm the judgment of the trial court.

/s/     Jerry Zimmerer
             Justice

Panel consists of Chief Justice Frost and Justices Zimmerer and Hassan.

Do Not Publish — TEX. R. APP. P. 47.2(b).